UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J. BARBOUR & SONS LTD., and BARBOUR INC.,<br><br>    Plaintiffs,<br><br>  v.<br><br>LEVI STRAUSS & CO.,<br><br>    Defendant. | Civil Action No. 18-CV-5195 (LAP) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, TRANSFER VENUE**

KILPATRICK TOWNSEND & STOCKTON LLP
Olivia Harris (OH 1983)
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
oharris@kilpatricktownsend.com

Gregory S. Gilchrist
(*pro hac* application to be submitted)
Ryan Bricker
(*pro hac* application to be submitted)
Gia L. Cincone
(*pro hac* application to be submitted)
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
ggilchrist@kilpatricktownsend.com
rbricker@kilpatricktownsend.com
gcincone@kilpatricktownsend.com

*Attorneys for Defendant*
*LEVI STRAUSS & CO.*

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND FACTS ................................................................................................. 2

   A. Barbour's Infringement of LS&Co.'s Famous Tab Trademark .......................................... 2

   B. LS&Co.'s Cease and Desist Effort .................................................................................... 4

   C. Most of the Evidence and Witnesses are in California; New York has no Connection to the Dispute. ............................................................................................................................ 5

III. ARGUMENT .................................................................................................................... 7

   A. The Court Should Decline Declaratory Judgment Jurisdiction and Dismiss This Action. ............................................................................................................................. 7

   B. Multiple Circumstances Justify The Court's Refusal to Exercise Its Jurisdiction and for Dismissing the Action. ................................................................................................... 8

      1. Barbour's Filing Priority Was Trivial. ............................................................................ 8

      2. Barbour's Lawsuit Was an Anticipatory Action. ............................................................ 9

      3. Litigation Tactics and Forum Shopping Must Not Preempt a Natural Plaintiff's Choice of Forum. ........................................................................................................................ 9

      4. Proceeding with Barbour's Declaratory Judgment Action Will Discourage Reasonable Settlement Discussions. ................................................................................................. 11

      5. The Case Should Be Dismissed ................................................................................... 12

   C. In the Alternative, the Court Should Dismiss the Action Because the Northern District of California is a Far More Convenient Forum. ..................................................................... 12

      1. The Place Where the Operative Facts Occurred .......................................................... 13

      2. The Convenience of the Parties .................................................................................... 13

      3. The Convenience of the Witnesses ............................................................................... 13

      4. The Relative Ease of Access of Proof .......................................................................... 14

      5. The Availability of Process to Compel the Attendance of Unwilling Witnesses ......... 14

      6. The Plaintiff's Choice of Forum .................................................................................... 14

      7. The Forum's Familiarity with the Governing Law ....................................................... 14

      8. Trial Efficiency and the Interests of Justice ................................................................. 14

IV. CONCLUSION ............................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alexander v. Franklin Res. Inc.*,
  No. C 06-7121 SI, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007)..............................................14

*Capitol Records, Inc. v. Optical Recording Corp.*,
  810 F. Supp. 1350 (S.D.N.Y. 1992)....................................................................................9, 12

*Cephalon, Inc. v. Travelers Companies, Inc.*,
  935 F. Supp. 2d 609 (S.D.N.Y. 2013)........................................................................................7

*CGI Solutions, LLC v. Sailtime Licensing Grp., LLC*,
  No. 05 Civ. 4120, 2005 WL 3097533 (S.D.N.Y. 2005) ............................................................9

*Elbex Video Ltd. v. Tecton Ltd.*,
  No. 00 Civ. 673, 2000 WL 1708189 (S.D.N.Y. Nov. 15, 2000) .........................................8, 10

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*,
  178 F. Supp. 2d 459 (S.D.N.Y. 2002)................................................................................12, 13

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir.1978) *overruled on other grounds by Pirone v.
  MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990).......................................................................7, 9

*Fed. Ins. Co. v. May Dep't Stores Co.*,
  808 F.Supp. 347 (S.D.N.Y. 1992).........................................................................................9, 10

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993), *cert. denied,* 510 U.S. 1140 (1994)........................................10

*Huth v. Hartford Ins. Co.*,
  298 F.3d 800 (9th Cir. 2002) .....................................................................................................7

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952)..................................................................................................................10

*Lear Siegler, Inc. v. Adkins*,
  330 F.2d 595 (9th Cir. 1964) ...................................................................................................11

*Mill Creek Press, Inc. v. The Thomas Kinkade Co.*,
  No. CIV A. 3:04-CV-1213-G, 2004 WL 2607987 (N.D. Tex. Nov. 16, 2004).......................10

*Mondo, Inc. v. Spitz*,
   No. 97 CIV. 4822 (LAP), 1998 WL 17744 (S.D.N.Y. 1998) ............................................ 11, 12

*Ontel Prods., Inc. v. Project Strategies Corp.*,
   899 F.Supp. 1144 (S.D.N.Y. 1995) ............................................................................... 8, 11

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
   No. 10 CIV 5843 DAB, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010) ........................... *passim*

*S&S Candies, Inc. v. Hershey Foods Corp.*,
   No. 00 Civ. 5243 (DLC), 2000 WL 1425092 (S.D.N.Y. Sept. 26, 2000) ............................. 12

*Schmitt v. JD Edwards World Solutions Co.*,
   No. C 01-1009 VRW, 2001 WL 590039 (N.D. Cal. 2001) ................................................. 11

*Schnabel v. Ramsey Quantitative Sys.*,
   322 F. Supp. 2d 505 (S.D.N.Y. 2004) ................................................................................. 9

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
   522 F. Supp. 2d 1265 (S.D. Cal. 2007) ............................................................................... 7

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ........................................................................................................... 7

*Xoxide, Inc. v. Ford Motor Co.*,
   448 F. Supp. 2d 1188 (C.D. Cal. 2006) ............................................................................ 10

*ZLine Designs, Inc. v, Bell'O Int'l, LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) ...................................................................................... 10

**Statutes**

28 U.S.C. § 1391(a) ................................................................................................................ 13

28 U.S.C. § 1404(a) ................................................................................................................ 12

Declaratory Judgment Act, 28 U.S.C. § 2201(a) ................................................................ 7, 10

Lanham Act (15 U.S.C. §1051, et seq.) .................................................................................... 4

I.     INTRODUCTION

Levi Strauss & Co. ("LS&Co.") moves to dismiss this declaratory relief action in favor of the infringement action that LS&Co. filed a few days later in the Northern District of California. Plaintiffs J. Barbour & Sons and Barbour Inc. (collectively "Barbour") abused the declaratory judgment statute by initiating this action after receiving a single cease and desist demand from LS&Co. for the sole purpose of forum shopping. Not only did Barbour's lawsuit improperly attempt to preempt LS&Co.'s choice of forum, Barbour affirmatively misled LS&Co. to be sure that Barbour's filing was first. To persuade LS&Co. to refrain from filing a complaint, Barbour promised LS&Co. an "investigation," "serious" consideration of its concerns, and a "substantive" response. Instead, just before it had promised to respond, Barbour filed this action seeking declaratory relief. Such anticipatory declaratory relief actions are dismissed, particularly when they are brought in a venue that has no connection to the dispute. The Court already has dealt with and rejected these tactics in a similar case involving LS&Co.[1]

Unless the rule against anticipatory suits is applied here, there would be no reason for parties any longer to attempt to resolve their disputes out of court. To preserve their right to bring an affirmative, infringement action, parties would be forced to file suit first and negotiate later. There is no advantage for this busy court to permit trademark infringers to forum shop or use the court or the declaratory judgment statute for settlement leverage, or to require trademark owners – in order to avoid declaratory judgment actions – to file lawsuits immediately in their preferred forum before they make a single effort to stop the infringement without formal litigation. Barbour's gamesmanship should not be rewarded by allowing this action to proceed.

Dismissal is particularly appropriate here because Barbour has filed in a jurisdiction that has no connection to the lawsuit. Under basic venue principles, the case ordinarily would be

---

[1]     In *Revise Clothing, Inc. v. Levi Strauss & Co.,* No. 10 CIV 5843 DAB, 2010 WL 4964099, at *4 (S.D.N.Y. Dec. 6, 2010), the Court addressed a declaratory relief action that apparently served as the playbook for Barbour's action. The Court dismissed the action and Revise's attempt to stay the parallel Northern District of California action.

1

transferred anyway.  Because this is a declaratory relief action and the mirror infringement action is already pending, a transfer is unnecessary and dismissal is proper.

## II.     BACKGROUND FACTS

### A.     Barbour's Infringement of LS&Co.'s Famous Tab Trademark

LS&Co. invented the blue jean in 1873 and owns numerous venerated and iconic trademarks that have symbolized its jeans and other apparel products for many decades.  Among these is LS&Co.'s Tab trademark which was adopted in 1936, when its then National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the pocket.  Declaration of Calla Yee ("Yee Dec."), ¶ 6, Ex. D.  The purpose of this "tab" was to provide "sight identification" of LS&Co.'s products.  *Id*. Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark, and confusing the customer."  *Id*.

LS&Co. uses its Tab trademark on all manner of apparel products.  Examples are shown below:

   

The Tab Trademark is often red but it is used in a wide array of colors, including often in blue, white, orange, silver, and black.  LS&Co. has persistently enforced its rights in the Tab Trademark and over the past ten years has written cease and desist letters, opposed trademark applications, or litigated approximately 270 matters in the United States related to the Tab and other LS&Co. trademarks.  Yee Dec., ¶ 7.  Almost all of these matters have included an initial

cease and desist letter before LS&Co. initiated any formal proceedings. The substantial majority of these matters settled before any lawsuit was necessary. LS&Co. has been sued for declaratory relief twice during the past decade. One matter was dismissed pursuant to a motion like this one and the other settled before the propriety of the filing was addressed. Yee Dec., ¶ 8.

LS&Co. owns numerous trademark registrations for its Tab Trademarks worldwide, including U.S. Trademark Registration Nos. 2,726,253; 1,157,769; 356,701; and 2,791,156 covering pants (including trousers and overalls), jeans, shorts, shirts, t-shirts, blouses, skirts, and jackets. All of these registrations are incontestable. Yee Dec., ¶ 11.

Barbour is using nearly identical tabs on identical products:

| LS&Co. Tab trademark | Barbour Tab |
|---|---|
| | |
| | |
| | |

Yee Dec., Ex. C at ¶ 18 ("California Action").  Unless LS&Co. was prepared to forsake its rights in its famous mark, it had no choice but to challenge Barbour's uses.

   **B.**  **LS&Co.'s Cease and Desist Effort**

When it learned that Barbour was using a tab, LS&Co. wrote to Barbour on May 22, 2018 complaining about the obvious trademark infringement, pointing out Barbour's potential liability, and "insist[ing] that Barbour immediately cease and desist, on a worldwide basis, from any use of the pocket tabs shown above."  Yee Dec., Ex. A.  The day before a response was due, Barbour asked for an extension of time, stating: "We are treating this matter seriously and in order for Barbour to investigate your claims and reply substantively, we would appreciate your agreement to an extension to respond by Monday 11 June 2018."  Yee Dec., Ex. B.  This request, it is now clear, was pure subterfuge.  On June 9, 2018, without making any further contact, Barbour sued LS&Co. in this District for declaratory relief, just before its requested "extension" expired.  At the same time, Barbour purported to initiate settlement discussions.  Yee Dec., ¶ 4.

Barbour unabashedly admits that it knew LS&Co. planned to file a coercive infringement lawsuit in LS&Co.'s choice of forum if Barbour did not comply with LS&Co.'s cease and desist requirements.  After calling LS&Co. a "trademark bully" (because it is well-known for enforcing its trademark rights), Barbour alleges that it expected a lawsuit and understood perfectly the claims that LS&Co. would assert: "In correspondence with Barbour & Sons through its counsel, LS&CO. has alleged that Barbour & Sons' actions may lead LS&CO. to file claims for trademark infringement and dilution and to seek injunctive relief and monetary damages under the United States trademark laws, including the Lanham Act (15 U.S.C. §1051, et seq.), and U.S. state law."  Complaint, ¶ 37; *compare* Yee Dec., Ex. C.  Barbour further alleges: "The C&D indicated LS&CO.'s intention to seek legal relief unless 'Barbour immediately cease and desist, on a worldwide basis, from any use of the pocket tabs,'…."  Complaint, ¶ 27.  Barbour's conduct also leaves no doubt that it filed this case in order to preempt a coercive lawsuit it knew was coming.  Barbour feigned that it was taking the claims "seriously" so that LS&Co. would hold

4

off filing its lawsuit until after Barbour's complaint was on file in Barbour's chosen (though wholly illogical) forum.  Yee Dec., Ex. B.

LS&Co. filed its coercive lawsuit, asserting trademark infringement and dilution, in the Northern District of California, a few days after this lawsuit was filed.  Yee Dec., Ex. C.

### C.  Most of the Evidence and Witnesses are in California; New York has no Connection to the Dispute.

The only connection to New York alleged in the complaint is that Barbour operates a retail store and showroom there.  Complaint, ¶ 9.  This does nothing to distinguish New York from all the other cities where Barbour and LS&Co. both sell their products.  Complaint, ¶ 17; Yee Dec., ¶ 11.  All of the design and decision-making involved in the lawsuit is remote from New York.  J. Barbour & Sons ("Barbour & Sons") is a United Kingdom corporation; Barbour, Inc. and LS&Co. are Delaware corporations.  These parties' headquarters respectively are in South Shields, United Kingdom; Milford, New Hampshire; and San Francisco, California.  Complaint, ¶¶ 4-6.  Barbour & Sons overtly argues that it does no business at all in this judicial district.  Complaint, ¶ 8.[2]

The main components of the declaratory relief action are Barbour's allegations that (i) the challenged tabs are dissimilar because Barbour's tabs say "BARBOUR" on them; (ii) LS&Co. is a "trademark bully;" (iii) LS&Co. allegedly has not enforced its mark against numerous third parties, rendering its mark weak (though still somehow remains a "bully"); (iv) Barbour has used its "flag" increasingly over many years; and (v) consumers have reported no "actual" confusion.  LS&Co.'s infringement and dilution claims in the California Action, naturally, are the mirror image of these defenses, and will include evidence of LS&Co.'s adoption of the mark in the

---

[2]  Barbour makes incongruous allegations that the Court does not have personal jurisdiction over Barbour & Sons, despite the fact that Barbour & Sons filed the complaint and alleges that it designs and produces the allegedly infringing products and distributes them through a U.S. subsidiary.  Complaint, ¶¶ 15-16.  While any such jurisdictional objection is bogus given the relationships among the Barbour entities, the allegations are agnostic between the two federal courts into whose districts Barbour sells its products.

1930s, the scope of use, sales, advertising and promotion of the mark, registration of the mark, and enforcement of its mark.

None of these issues will involve evidence from individual store operations, either Barbour's New York store or LS&Co.'s New York stores. The rights are held and owned by LS&Co. in San Francisco; LS&Co.'s allegedly deficient enforcement decisions are made in San Francisco; witnesses and evidence of LS&Co.'s use and advertising of products bearing the Tab Trademark and the nature of its use over more than eighty years, are in San Francisco. The evidence and witnesses to the fame of LS&Co.'s mark and the harm caused by Barbour's "flags" are much more likely to be located in San Francisco than New York.

Evidence of Barbour's infringement and its other purported defenses likewise is not located in New York. From what appears in the declaratory relief action, Barbour's products are designed and produced (though not all are manufactured) in the United Kingdom. Complaint, ¶¶ 15-17. Evidence of Barbour's sales and marketing of its products, within the United States, ostensibly will be located in New Hampshire at its U.S. headquarters. Evidence of Barbour's knowledge and intent to copy LS&Co.'s trademark (or evidence that Barbour was unaware of LS&Co.'s mark when it designed its products) will be in the United Kingdom and, possibly, New Hampshire. Barbour's claim that using BARBOUR on its "flags" obviates any likely confusion must be tested against the likelihood that consumers will believe there is an affiliation or sponsorship among the brands. Barbour's penchant for collaborations with other brands, including on denim products with Paul Smith and Denham, will have a significant bearing on this issue. Yee Dec., Exs. E-L. It appears that all of these collaborations originated with Barbour in the United Kingdom. *Id.*

In fact, all signs point to the fact that Barbour's design operation and brand decision-making is controlled from the United Kingdom. Contrary to Barbour's assertion that Barbour & Sons does not do business in the United States, Barbour's website positions the United Kingdom company as global and states that "Barbour now has 11 of its own retail shops in the UK, and a presence in over 40 countries worldwide including the United States…." Yee Dec., Ex. M. For

6

present purposes, the important point is that Barbour makes no allegations suggesting that anything important to resolution of the case occurs in New York. It is abundantly clear that the focus of LS&Co.'s infringement claims and Barbour's defenses will be in San Francisco and the United Kingdom, perhaps with specific Barbour sales and distribution information in New Hampshire.

### III. ARGUMENT

#### A. The Court Should Decline Declaratory Judgment Jurisdiction and Dismiss This Action.

This Court has no obligation to entertain Barbour's requests for declaratory judgment. Jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), is discretionary. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration"); *Revise Clothing, Inc. v. Levi Strauss & Co.,* No. 10 CIV 5843 DAB, 2010 WL 4964099, at *4 (S.D.N.Y. Dec. 6, 2010) ("*Revise Clothing*") ("statute grants discretionary jurisdiction to courts to grant or deny relief rather than provide a litigant with an "absolute right" to an adjudication of claims); *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 802 (9th Cir. 2002) (declaratory judgment jurisdiction "committed to the sound discretion of the federal district courts."). In particular, courts may decline jurisdiction where it appears that the declaratory action was motivated by litigation tactics. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978) *overruled on other grounds by Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir. 1990) ("*Factors Etc.*") (special circumstances counsel against application of the first-filed rule when "inequitable conduct, bad faith, or forum shopping" motivated the commencement of the first-filed action); *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) (dismissal proper where declaratory judgment action "was filed for an improper tactical purpose."); *Cephalon, Inc. v. Travelers Companies, Inc.,* 935 F. Supp. 2d 609, 613 (S.D.N.Y. 2013) ("courts may consider 'equitable, prudential, and policy arguments' in determining whether to entertain a declaratory

action, … 'particularly when there is a pending proceeding in another court, state or federal, that will resolve the controversies between the parties…'") (citations omitted).

### B.   Multiple Circumstances Justify The Court's Refusal to Exercise Its Jurisdiction and for Dismissing the Action.

Had Barbour researched whether it was entitled to pursue a declaratory judgment claim, it would quickly have determined that it should not. Barbour's conduct is nearly identical to that of the declaratory judgment plaintiff in the *Revise Clothing* case except that, in that case, the plaintiff sued in its home forum at least providing the veneer of a rationale for venue. The *Revise Clothing* court considered LS&Co.'s cease and desist correspondence – in all material respects identical to the letter that Barbour received – and confronted the same kind of misleading request for additional time to respond as requested here by Barbour, before the plaintiff filed a preemptive lawsuit. For a variety of reasons, the *Revise Clothing* Court declined to exercise declaratory judgment jurisdiction and dismissed the declaratory relief action in favor of the later-filed trademark infringement suit in San Francisco. *Revise Clothing,* 2010 WL 4964099, at *2-5.

#### 1.   Barbour's Filing Priority Was Trivial.

A court is not required to adjudicate the first-filed action where the difference in filing date is "*de minimis.*" *Elbex Video Ltd. v. Tecton Ltd.,* No. 00 Civ. 673, 2000 WL 1708189, at *3 (S.D.N.Y. Nov. 15, 2000) ("when the filing date difference between two parallel actions is *de minimis*, the Court has the discretion to disregard the first-filed doctrine altogether"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995) ("The first-filed rule [ ... ] is usually disregarded where the competing suits were filed merely days apart."). Here, LS&Co.'s action was filed three business days after Barbour filed its complaint. See *Revise Clothing*, 2010 WL 4964099, at *2 (dismissing case and relying on these authorities).[3]

---

[3]   LS&Co. is not arguing that this Court should not decide this motion or determine in which court the action should proceed (though the cited cases would authorize the California court to decide the issue). For purposes of this motion, the minimal time difference between the complaints is merely another reason why it is appropriate to dismiss Barbour's declaratory

### 2. Barbour's Lawsuit Was an Anticipatory Action.

Anticipatory filings are improper and authorize the court to depart from the rule that the first filed action should proceed. *Schnabel v. Ramsey Quantitative Sys.*, 322 F. Supp. 2d 505, 511–12 (S.D.N.Y. 2004). When a parties' cease and desist letter provides notice – as Barbour admits occurred here – of plans to file a coercive lawsuit, and the opponent thereafter preemptively files a declaratory judgment action, the first-filed action is an anticipatory filing. *Factors Etc.*, 579 F. 2d at 219 (cease and desist letter stating that defendant would be subject to litigation for injunctive relief, damages and an accounting if defendant did not stop selling infringing product provided defendant with notice of suit); *CGI Solutions, LLC v. Sailtime Licensing Grp., LLC*, No. 05 Civ. 4120, 2005 WL 3097533, at *3 (S.D.N.Y. 2005); *Fed. Ins. Co. v. May Dep't Stores Co.*, 808 F.Supp. 347, 350 (S.D.N.Y. 1992) (letter stating that lawsuit would be filed if the claim was not satisfied by a specific date provided party with notice of suit).

LS&Co.'s cease and desist demands – that Barbour stop selling within a specific time frame and provide information about the alleged infringement – is exactly the type of notice that makes Barbour's filing anticipatory. *Factors Etc.* 579 F. 2d at 219; *Revise Clothing,* 2010 WL 4964099, at *2. Barbour's allegations that LS&Co. is a well-known trademark "bully" and that Barbour understood the letter to threaten litigation also confirms notice of LS&Co.'s planned suit and that Barbour's attempt to preempt LS&Co.'s choice of forum was anticipatory and improper. *Revise Clothing,* 2010 WL 4964099, at *3.

### 3. Litigation Tactics and Forum Shopping Must Not Preempt a Natural Plaintiff's Choice of Forum.

The circumstances of Barbour's declaratory judgment complaint are only consistent with gamesmanship. Barbour must barely have finished reading the cease and desist letter before it started investigating and preparing its declaratory judgment complaint. Barbour's ruse about its

---

judgment action. See *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992), on reargument (Nov. 20, 1992) ("the date of filing is less important when the competing actions are filed within a short period of time.").

intention to substantively respond to LS&Co.'s cease and desist letter is an improper use of a declaratory judgment action.  *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185 (1952) (noting that an alleged infringer cannot use the Declaratory Judgment Act to give it "a paramount right to choose the forum for trying out questions of infringement and validity"); *Federal Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) ("misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the principal action militates in favor of dismissing the declaratory judgment action").

Barbour has no explanation but deceit for having told LS&Co. that Barbour needed more time for a serious response all the while it was finalizing its complaint.  See *Elbex Video,* 2000 WL 1708189, at *3 (denied request to proceed with first filed action because "Tecton led Elbex to believe this [settlement] was possible."); *Xoxide, Inc. v. Ford Motor Co*., 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (dismissing declaratory relief action where plaintiff responded to settlement overtures by "secretly filing a lawsuit in Los Angeles while giving the impression to [defendant's] representatives that it was making its best efforts to negotiate a settlement of the dispute"); *ZLine Designs, Inc. v, Bell'O Int'l, LLC*, 218 F.R.D. 663, 666 (N.D. Cal. 2003) (dismissing first filed action in light of "misleading communications" from plaintiff, noting, "by accepting Bell'O's offer to extend the deadline for settlement twice, Z-Line also tacitly accepted that it was willing to explore settlement").

An anticipatory action also interferes with the general rule that the natural plaintiff in a coercive action, particularly in an infringement case, is entitled to deference to its choice of forum.  "[C]ase law suggests that there is a 'general policy that a party whose rights are being infringed should have the privilege of electing where to enforce its rights.'"  *Mill Creek Press, Inc. v. The Thomas Kinkade Co*., No. CIV A. 3:04-CV-1213-G, 2004 WL 2607987, at *7 (N.D. Tex. Nov. 16, 2004) (citing and quoting *Texas Instruments, Inc. v. Micron Semiconductor, Inc.,* 815 F. Supp. 994, 997 (E.D. Tex. 1993)); *see also Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993), *cert. denied,* 510 U.S. 1140 (1994) ("[A]n action for declaration of

10

noninfringement of a trademark should give way to a later-filed suit for trademark infringement.").

For this reason, anticipatory actions like Barbour's – to support forum shopping and preempt the natural plaintiff's choice of forum – are dismissed. *Mondo, Inc. v. Spitz*, No. 97 CIV. 4822 (LAP), 1998 WL 17744, at *2 (S.D.N.Y. 1998) ("When such anticipatory declaratory judgment litigation appears to have been motivated by forum shopping, dismissal of the declaratory judgment action is warranted."); *Schmitt v. JD Edwards World Solutions Co.*, No. C 01-1009 VRW, 2001 WL 590039, at *2 (N.D. Cal. 2001) ("If a court is faced with two suits, a first filed declaratory relief action and a subsequent coercive suit filed in a different court, and the court determines that the declaratory suit is a preemptive suit meant to deprive the natural plaintiff of the forum of his choice, the court should dismiss or stay the declaratory suit."); *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 602 (9th Cir. 1964) ("The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum") (citation omitted).

### 4. Proceeding with Barbour's Declaratory Judgment Action Will Discourage Reasonable Settlement Discussions.

A strongly worded initial cease and desist letter, even if it confirms a sufficient controversy to sustain declaratory relief jurisdiction, is not a basis for preempting the natural claimant's choice of forum. If this tactic were permitted, trademark owners would need to stop sending cease and desist letters in favor of racing to the courthouse with immediate lawsuits – at least to the extent they wanted to secure their reasonable choice of forum. In LS&Co.'s case, given the popularity of its marks among infringers, this would mean dozens (or more) of additional lawsuits that – to date – have been resolved without litigation by cease and desist correspondence. Yee Dec., ¶¶ 7-8. Courts have refused to proceed with first-filed declaratory relief actions that preempt reasonable overtures at an amicable resolution. See *Ontel Prods.*, 899 F.Supp. at 1150 ("Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply

11

because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit."); *S&S Candies, Inc. v. Hershey Foods Corp.*, No. 00 Civ. 5243 (DLC), 2000 WL 1425092, at *2 (S.D.N.Y. Sept. 26, 2000) ("Allowing this case to proceed in the Southern District of New York would unfairly penalize Hershey for its attempts to settle its dispute with S&S without resorting to litigation."); *Capitol Records*, 810 F. Supp. at 1354 ("Another factor that weighs against application of the first-filed rule is that this action was essentially a victory in a race to the courthouse triggered by ORC's letter.  ORC's letter served the dual purpose of proposing further settlement discussion and putting Capitol on notice that failure of the negotiations would lead to legal action.") (citing *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y. 1977), *aff'd* 573 F.2d 1288 (2d Cir. 1978), and *Factors Etc.*, 579 F. 2d at 579).

    **5.**  **The Case Should Be Dismissed**

Nothing will be decided in this action that would not also necessarily be decided in the California action.  Where the declaratory judgment and coercive actions are mirrors of one another and the declaratory judgment action is anticipatory, the proper course is to dismiss the complaint.  *Mondo, Inc.,* 1998 WL 17744, at * 3; *Revise Clothing,* 2010 WL 4964099, at *4.

  **C.**  **In the Alternative, the Court Should Dismiss the Action Because the Northern District of California is a Far More Convenient Forum.**

When a declaratory judgment action and a coercive action are both pending, the Court may dismiss (or, alternatively, transfer) a first-filed declaratory judgment action if, on balance, the second venue is more convenient.  "Because the factors to consider are substantially identical in weighing the balance of convenience for application of the first-filed rule and in ruling on a motion to transfer venue, a single analysis of the factors will resolve both issues." *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002)

The statute for changing venue states in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  After venue is

found to be proper in the destination district,[4] the following factors establish that this action must be dismissed or transferred to the pending California action. (*See Everest Capital*, 178 F. Supp. 2d at 515):

### 1.  The Place Where the Operative Facts Occurred

Most of the important conduct, to both the infringement claims and the declaratory judgment claims (i.e. infringement defenses), occurred in California. The marks were created in San Francisco and the use, sales, advertising, promotion, and registration of those marks was orchestrated there. LS&Co.'s decisions about protecting its marks are made there.

No operative facts occurred in New York other than sales of infringing products, records of which are no doubt aggregated, along with records of other allegedly infringing sales that occur outside New York, in reports maintained in New Hampshire.

### 2.  The Convenience of the Parties

Disputes between global companies rarely afford a single venue that is convenient for both parties. Here, however, the only domestic venue with a connection to the case that affords any meaningful degree of convenience is San Francisco. While San Francisco may not be particularly convenient for either Barbour party, New York is not convenient for any party.

### 3.  The Convenience of the Witnesses

The principal witnesses will be in San Francisco or the United Kingdom. Barbour & Sons has already previewed that it will fight any suggestion that its witnesses need to cooperate or participate in the action, even if the action proceeds in New York. Accordingly, some witnesses may need to be deposed or provide answers to written discovery in the United Kingdom. Should Barbour's witnesses have a change of heart about participating, neither proposed venue is convenient for them. Meanwhile, San Francisco is highly convenient for all of LS&Co.'s witnesses.

---

[4] Obviously Barbour could have sued LS&Co. in San Francisco. A defendant's residence is a specific basis for venue. 28 U.S.C. § 1391(a).

### 4. The Relative Ease of Access of Proof

Most of the physical evidence – involving over 80 years of trademark use – is located in San Francisco.  The rest is located in the United Kingdom or New Hampshire.  None, other than partial sales evidence that is duplicated more fully in New Hampshire, is located in New York.

### 5. The Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor is neutral.

### 6. The Plaintiff's Choice of Forum

LS&Co. is the natural plaintiff in this dispute.  Its choice of forum is the Northern District of California.  Barbour's choice is less important when its suit is anticipatory of LS&Co.'s infringement action.  *Alexander v. Franklin Res. Inc.*, No. C 06-7121 SI, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) ("courts should disregard a plaintiff's forum choice where the suit is a result of forum shopping").

### 7. The Forum's Familiarity with the Governing Law

This factor is neutral.

### 8. Trial Efficiency and the Interests of Justice.

Efficiency is largely neutral; both courts are busy.  There is a decided tilt, however, in the interest of justice factor toward San Francisco.  New York has no genuine connection to the controversy and there is no justification for burdening jurors or the courts in New York with this dispute.

While some factors are neutral, every factor where there is a difference favors the Northern District of California.  The important factors relating to overall cost and convenience, and location of the witnesses, favor litigation of the dispute in California. Under these circumstances, the Court should dismiss the action in favor or the pending infringement action, or transfer this action to the Northern District of California.

## IV. CONCLUSION

Barbour had no business responding to an initial cease and desist letter by immediately filing a lawsuit.  LS&Co. respectfully requests that this Court dismiss this Action or, alternatively, transfer it to the United States District Court for the Northern District of California so that it may be consolidated with the pending California Action.

Dated: July 5, 2018

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Olivia Harris*
Olivia Harris (OH 1983)

1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
oharris@kilpatricktownsend.com

Gregory S. Gilchrist
(*pro hac* application to be submitted)
Ryan Bricker
(*pro hac* application to be submitted)
Gia L. Cincone
(*pro hac* application to be submitted)
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
ggilchrist@kilpatricktownsend.com
rbricker@kilpatricktownsend.com
gcincone@kilpatricktownsend.com

*Attorneys for Defendant*
*LEVI STRAUSS & CO.*

70942909V.1